UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TERRY TERRELL CLIPPER,<br><br>Defendant. | Criminal Action No. 96-291 (BAH) |

## MEMORANDUM OPINION

The defendant Terry Clipper has served about nineteen years of his over twenty-one year sentence on his conviction by a jury for unlawful possession with intent to distribute five grams or more of crack cocaine and several gun-related charges. He has filed, proceeding *pro se*, two related motions for a sentence reduction, *see* Def.'s Mot. Reduction of Sentence or a Downward Departure under 4A1.3 and 3582(c)(2) ("Def.'s Reduc. Mot."), ECF No. 77; Def.'s Suppl. Mot. for a Reduce[d] Sentence Pursuant to U.S.S.G. Retroactive Amendment(s) 706, 750, 782, or 1B1.10 ("Def.'s Suppl. Mot."), ECF No. 83, and, as support for a sentence reduction, a motion for post-conviction DNA testing of narcotics evidence recovered from his vehicle following his arrest, *see* Def.'s Mot. Post-Conviction DNA Testing ("Defs.' DNA Mot."), ECF No. 81. For the reasons set forth below, both motions are denied.

**I.   BACKGROUND**

On July 19, 1996, the District of Columbia Metropolitan Police Department received calls that a person driving a blue Ford LTD fired shots into another car. Presentence Investigation Report ("PSR") at 4[1]. The police responded and apprehended the defendant in the

---

[1] The Presentence Investigation Report was not entered on the docket for this matter, but both the government and the defendant entered entries on the docket acknowledging their receipt of the Presentence

1

vicinity of the gunshots after he had fled on foot from his car, which was a blue Ford LTD. *Id.;* Govt.'s Opp'n to Def.'s Reduc. Mot. ("Govt.'s Reduc. Opp'n") at 1, ECF No. 80. The police found inside the defendant's car a "semi-automatic pistol with one round in the chamber," "a white rock-like substance that later field tested positive for cocaine base, and a bag of money, totaling $3,714." PSR at 4.

On March 13, 1997, following a jury trial, the defendant Clipper was convicted of all charges in a six-count Indictment, namely: (1) unlawful possession with intent to distribute five grams or more of crack cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); (2) unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (3) unlawful possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (4) carrying a pistol without a license, in violation of D.C. Code § 22-3204(a); (5) possession of unregistered firearm, in violation of D.C. Code § 22-231(a); and (6) possession of unregistered ammunition, in violation of D.C. Code § 6-2361(3). Judgment at 1, ECF No. 25.  The defendant was subsequently sentenced to 360 months of imprisonment followed by eight years of supervised release, *id.* at 2–3, based on a finding that the defendant was a career offender under U.S.S.G. § 4B1.1 due to two prior felony convictions, PSR at 11.

On June 25, 1999, the defendant moved to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255.  Def.'s Mot. to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Def.'s 2255 Mot."), ECF No. 54. The defendant and the government reached an agreed upon disposition of the defendant's motion, and jointly moved to vacate the defendant's conviction for unlawful possession of ammunition by a convicted felon, as duplicative of his conviction for unlawful possession of a firearm by a convicted felon, and to

---

Investigation Report. *See* Receipt and Acknowledgement of Presentence Investigation Report by USA, ECF No. 23; Receipt and Acknowledge of Presentence Investigation Report by Terry Terrell Clipper, ECF No. 24.

amend the defendant's 360-month sentence to 262 months.  Joint Mot. to Amend Judgment on Agreed Disposition of Def.'s Mot. to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Joint 2255 Stipulation") at 2, ECF No. 74.  The joint motion was granted, resulting in vacatur of the defendant's conviction for unlawful possession of ammunition by convicted felon, in violation of 18 U.S.C. § 922(g)(1), with a concomitant reduction of the defendant's sentence to 262 months, with credit for time served.  Order at 1, dated Oct. 17, 2002, ECF No. 75.

Twelve years later, on September 19, 2014, the defendant once again moved for reduction of his sentence or a downward departure, seeking this relief pursuant to U.S.S.G. § 4A1.3 and 18 U.S.C. § 3582(c)(2), *see* Def.'s Reduc. Mot., which motion was supplemented on October 20, 2014, *see* Def.'s Suppl. Mot.  As support for this motion, the defendant states that "[f]rom the time of defendant's re-sentence until now, defendant has obtained an extraordinary prison history in rehabilitating himself, in the industry work, and programming, while maintaining good conduct, which easily qualify defendant for a post-rehabilitation or post-conviction and rehabilitation sentence in light of the Supreme Court's decision in Pepper v. United States, [562 U.S. 476 (2011)] . . . ." Def.'s Reply in Opp'n to Gov't's Opp'n to Def.'s Reduc. Mot. ("Def's Reply"), at 1, ECF No. 82.  Also, on October 20, 2014, the defendant filed a motion, under the Innocence Protection Act of 2004 ("IPA"), 18 U.S.C. § 3600, for an order requiring the post-conviction DNA testing of six packets of drugs recovered from his car.  *See* Def.'s DNA Mot.  Specifically, the defendant seeks comparisons of his DNA to that found on any saliva, sweat, hair samples, skin tissue, and fingerprints found on the packets of drugs.  *Id.* ¶ 3.  According to the defendant, "[a]ll biological material evidence retrieved from his car . . .

[will] prove that [he] is actually innocent of his drug conviction" and will support his pending motion for a sentence reduction. *Id*. Both motions are ripe for resolution.[2]

## II. DISCUSSION

The defendant's two pending motions request a second reduction in his sentence and post-conviction DNA testing of the drugs found in his car. Each motion is discussed *seriatim* below.

### A. Motion to Reduce Sentence

The defendant seeks, pursuant to 18 U.S.C. § 3582(c), a further reduction in his sentence, but none of the grounds he describes provide a basis for relief. [3]

Section 3582(c) permits modification of an imposed term of imprisonment only in the following limited circumstances: (1) upon motion of the Director of the Bureau of Prisons, 18 U.S.C. § 3582(c)(1)(A); (2) as "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedures," *id.* § 3582(c)(1)(B); and (3) "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," *id.* § 3582(c)(2). While the D.C. Circuit has made clear that "[d]istrict courts retain broad authority to control § 3582(c)(2) proceedings," a "section 3582(c)(2) proceeding is not a "plenary resentencing proceeding," nor is it "a license for the defendant to re-litigate his sentence

---

[2]     This case was re-assigned to the undersigned Chief Judge on March 25, 2016.

[3]     In addition to 28 U.S.C. § 3582(c), the defendant argues that he is entitled to "a downward departure under [U.S.S.G. §] 4A1.3." Def.'s Reduc. Mot. at 1. While the defendant is correct that this particular Guideline policy statement authorizes "Departures Based On Inadequacy Of Criminal History Category" at the time of sentencing, this Guideline provision does not provide authority to the Court to modify a pre-existing sentence. Consequently, the defendant's motion to reduce sentence is construed as a predicated only on 18 U.S.C. § 3582(c).

4

wholesale or challenge previously adjudicated aspects of his conviction." *United States v. Wyche*, 741 F.3d 1284, 1292 (D.C. Cir. 2014) (internal quotations and citations omitted); *see also United States v. Swangin*, 726 F.3d 205, 207 (D.C. Cir. 2013) ("Section 3582(c)(2) . . . 'does not authorize a sentencing or resentencing proceeding'. . . . Rather, it 'authorize[s] only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding.'" (quoting *Dillon v. United States*, 560 U.S. 817, 826 (2010)).

Here, the defendant relies on the third prong of Section 3582(c)(2) for modification of his sentence, arguing that (1) when the defendant's sentence was reduced by joint motion in 2002, "the Court failed to consider all of the Defendant's post-conviction and sentence rehabilitation mitigation factors as stated in §3553(a)," Def.'s Reduc. Mot. at 2; and (2) the defendant's "career offender status 'over-represented' Defendant's criminal history and offenses," making him eligible for a downward departure from his criminal history category under U.S.S.G. § 4A1.3, *id.* at 5, and thereby allowing him to qualify for sentence reductions under three amendments made by the United States Sentencing Commission to the base offense level for crack cocaine offenses, Def.'s Suppl. Mot. at 1–2.[4] Neither of the defendant's arguments present permissible grounds for further reduction of his sentence.

---

[4] The Sentencing Commission, in November 2007, lowered the base offense level for crack cocaine offense, UNITED STATES SENTENCING GUIDELINES MANUAL app. C, amend. 706, 711 (Nov. 1, 2007), and later made that change retroactive, UNITED STATES SENTENCING GUIDELINES MANUAL app. C, amend. 713 (Nov. 1, 2009). In November 2011, the Sentencing Commission again retroactively reduced the Guidelines ranges for crack cocaine offenses. *See* UNITED STATES SENTENCING GUIDELINES MANUAL app. C, amend. 750 (Nov. 1, 2011). Finally, in November 2014, the Sentencing Commission retroactively reduced by two levels the base offense levels set out in the Drug Quantity Tables at U.S.S.G. §§ 2D1.1 and 2D1.11 for drug trafficking offenses. *See id.* app. C, amend. 782 (Nov. 1, 2014); U.S.S.G. § 1B1.10(a)(2)(A), (d) (applying amendment 782 retroactively). The defendant invokes amendments 706, 750 and 782 as bases for further sentence reductions. Def.'s Suppl. Mot. at 1. The defendant also invokes the Fair Sentencing Act as an additional basis for a sentence reduction. *Id.* Amendment 750, however, already "account[s] for the changes in the statutory penalties made by the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372, for offenses involving cocaine base ('crack cocaine')." UNITED STATES SENTENCING GUIDELINES MANUAL app. C, amend. 750 (Nov. 1, 2011). Consequently, the Fair Sentencing Act does not provide a separate ground for a reduced sentence.

### 1. No Sentence Reduction is Permissible For Failure to Consider Post-Sentencing Rehabilitation At Re-Sentencing

The defendant relies principally on *Pepper v. United States*, 562 U.S. 476 (2011), in arguing that his sentence should now be reduced because the sentencing judge did not properly consider "post-conviction and sentence rehabilitation mitigation factors" when the sentencing judge entered the stipulated agreement between the defendant and the government to reduce his sentence from 360 to 262 months of incarceration. Def.'s Reduc. Mot. at 2. This reliance is misplaced.

In *Pepper,* the Supreme Court held that "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's post-sentencing rehabilitation." 562 U.S. at 481. *Pepper* simply does not create additional authority for modifying a sentence. Another Judge on this Court recently rejected a similar request for reduction of a sentence "due to post-sentencing rehabilitation, relying on *Pepper*," explaining that "*Pepper* allows a court to consider post-sentencing rehabilitation in imposing a new sentence after a remand for resentencing," but absent a remand for resentencing, "the Court's power to modify a previously imposed sentence is narrowly limited. Neither 18 U.S.C. § 3582(c)(2) nor any other provision allows the Court to reopen an imposed sentence based on post-sentencing rehabilitation." *United States v. Moore*, 930 F. Supp. 2d 141, 145 n.3 (D.D.C. 2013); *see also United States v. Clavielle*, 505 F. App'x 597, 598 (7th Cir. 2013) (holding that where the defendant's "sentence was not set aside on appeal nor remanded for sentencing[,] *Pepper* . . . does not support her request for a sentence reduction to account for her postsentencing rehabilitation"); *United States v. Turman*, 465 F. App'x 497, 499–500 (6th Cir. 2012) ("Section 3582 does not contemplate the lone claim arguably preserved on appeal: the relevance of rehabilitation evidence to a sentence reduction after *Pepper*.*)*; *United States v.*

*Waites*, 500 F. App'x 822, 824 (11th Cir. 2012) ("*Pepper* held only that a district court could take into account a defendant's subsequent rehabilitation once it *already had* authority to resentence him. The decision does not provide that post-sentencing rehabilitation itself opens the door to sentence modification." (internal citations omitted) (emphasis in original)). Thus, even if the defendant is correct that his post-sentencing rehabilitation could or should have been considered at the time of his 2002 re-sentencing, that fact does not confer authority now on this Court to modify his sentence further.

To the extent the defendant seeks to challenge the Court's entry of the joint stipulated sentence in 2002, he is precluded from doing so for two reasons. First, the time to appeal or to set aside the amended judgment has long since passed. *See* Fed. R. App. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after . . . the entry of . . . the judgment or the order being appealed."); 28 U.S.C. § 2255(f) ("A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from . . . the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.").

Second, even if the defendant were permitted a collateral attack on the amended sentence imposed in 2002, the defendant has not demonstrated that the amended sentence was entered in violation of *Pepper*. The defendant did not present any evidence of post-sentencing rehabilitation in 2002 at the time he moved to amend his sentence. *See generally* Def.'s 2255 Mot.; Joint 2255 Stipulation. Where a defendant has failed to raise an issue at sentencing or, as here, at re-sentencing, a motion under Section 3582(c)(2) "is not the appropriate vehicle" since

those "are arguments for direct appeal and are not cognizable under § 3582(c)(2)." *United States v. Kennedy*, 722 F.3d 439, 442 (D.C. Cir. 2013) (internal quotations and citations omitted).

The defendant's post-sentencing rehabilitation is commendable, but does not entitle him to further modification of his sentence.

### 2. Guideline Amendments Provide No Basis for Modification of This Defendant's Sentence

The defendant also seeks to modify his sentence, under 18 U.S.C § 3582(c)(2), due to amendments 706, 750, and 782 to the crack cocaine Guidelines at U.S.S.G. § 2D1.1, which Guideline falls in the chapter governing "Offenses Involving Drugs and Narco-Terrorism" and, addresses "Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses): Attempt or Conspiracy" ("Drug Guideline"). Def.'s Suppl. Mot. 1–2. These retroactively applicable crack cocaine amendments, however, do not apply to the defendant's sentence. As the D.C. Circuit has explained, "[t]o obtain a sentencing reduction under Section 3582(c)(2), the defendant not only must show that the sentence was 'based on' a Guidelines sentencing range, but also must meet an additional requirement. The defendant must show that the 'applicable guideline range' was subsequently lowered." *United States v. Duvall*, 740 F.3d 604, 615 (D.C. Cir. 2013). Where a defendant was sentenced under the career offender Guideline, "the fact that the Guidelines sentencing range for the offense of conviction — for example, a crack-cocaine Guideline — was later lowered would not alone suffice to support a Section 3582(c)(2) sentencing reduction." *Id*. This is because "the 'applicable' Guidelines sentencing range is the range for career offenders," *id*., not the Drug Guideline.

The defendant concedes that, at the time of his original sentencing and re-sentencing, he had two prior felony convictions for unlawful possession with intent to distribute cocaine and

8

that, consequently, his guideline range was determined based on his status as a career offender under U.S.S.G. § 4B1.1, not the Drug Guideline.  Def.'s Reduc. Mot. at 4–5; PSR at 5–6; Judgment at 6 ("The Court adopts the factual findings and guideline application in the presentence report.").  The Guideline amendments reducing the advisory sentencing range for crack cocaine offenses, therefore, do not apply to the defendant's sentence and do not trigger the authority of the Court to modify his sentence under § 3582(c)(2).  *United States v. Tepper*, 616 F.3d 583, 588 (D.C. Cir. 2010) ("[Section] 3582(c) does not authorize a district court to reduce a career offender's term of imprisonment based on . . . amendments to the crack cocaine guidelines.").

The defendant nevertheless argues that the sentencing court erred by classifying and sentencing him as a career offender.  Def.'s Reduc. Mot. at 7.  Pursuant to U.S.S.G. § 4B1.1 (1995), "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  The defendant was considered a career offender based on two prior felony convictions for possession with intent to distribute cocaine, committed several months apart in 1990, when the defendant was eighteen years old.  *Id.*; PSR at 7–8.  First, the defendant posits that the sentencing court should have treated these two drug convictions as a single conviction because they were "consolidated . . . for sentencing purposes" before the D.C. Superior Court.  *Id.* at 5.  Second, he maintains that because his criminal history significantly overrepresented the seriousness of his past criminal conduct, he is eligible for a downward departure.  *Id.*

9

These are arguments that could have been, but were not, raised on direct appeal and are now untimely. *Kennedy*, 722 F.3d at 442 (finding no abuse of discretion for district court to refuse to consider defendant's challenge to determination of guideline sentencing range raised for first time in § 3582(c)(2) motion). The defendant is "well beyond the jurisdictional time period for correcting the purported guidelines calculation error he identifies." *Waites*, 500 F. App'x at 823. The time to correct his sentence under Fed. R. Crim. P. 35(a) ("Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."), to appeal the sentence under Fed. R. App. P. 4(b)(1)(A) (permitting appeal within fourteen days), or to vacate, set aside, vacate or correct sentence under 28 U.S.C. § 2255 ("A 1-year period of limitation shall apply to a motion under this section."), have all long elapsed.

In any event, the defendant's arguments lack merit. First, the defendant's two prior drug convictions constitute two separate qualifying convictions under U.S.S.G. § 4B1.1, conferring career offender status upon the defendant. According to the Commentary to U.S.S.G. § 4A1.2 (1995), "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." Here, the two prior offenses that form the basis for the defendant's career offender status are his April 23, 1990 arrest for possession with intent to distribute cocaine and his July 27, 1990 arrest for possession with intent to distribute cocaine. PSR at 7; Def.'s Reduc. Mot. at 7. These two prior convictions were not only two separate offenses committed on two separate days, they were separated by an intervening arrest. After the defendant was arrested on April 23, 1990 for the first qualifying felony, he was arrested again on May 24, 1990 for carrying a dangerous weapon, before he was arrested, for a third time, on July 27, 1990 for the second

qualifying felony. PSR at 7–8. Second, while U.S.S.G. § 4A1.3(b)(3)(A) authorizes a downward departure of the criminal history category for career offenders, the record does not show that the defendant's "criminal history was so minor that it rendered [the defendant's] an 'unusual' *career offender case*," *United States v. Spencer*, 25 F.3d 1105, 1113 (D.C. Cir. 1994) (emphasis in original), warranting such a departure.

Accordingly, the defendant's motion to reduce his sentence, under 18 U.S.C. § 3582(c), is denied.

### B. Motion for Post-Conviction DNA Testing

The defendant moves, under the IPA for post-conviction DNA testing of drugs recovered from his car at the time of his arrest. Def.'s DNA Mot. at 1.[5] Without question, "[m]odern DNA testing can provide powerful new evidence unlike anything known before," but "[a]t the same time, DNA testing alone does not always resolve a case." *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52, 62 (2009). The IPA "allows federal prisoners to move for court-ordered DNA testing under certain specified conditions." *Id*. at 63. Specifically, the IPA authorizes federal prisoners to seek a court order requiring DNA testing of "specific evidence if the court finds that all" ten enumerated requirements in the statute are satisfied. 18 U.S.C. § 3600(a).[6] Despite potentially satisfying certain of the enumerated requirements, the

---

[5] The defendant also moves for post-conviction DNA testing under 28 U.S.C. § 2255(f)(4) and D.C. Code § 22-4133. Neither of these provisions is applicable here. Section 2255(f)(4) authorizes a federal prisoner to challenge an imposed sentence within one year from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," but provides no statutory right of access to post-conviction DNA testing. The other statute cited by the defendant, D.C. Code § 22-4133, applies only to persons "in custody pursuant to the judgment of the Superior Court of the District of Columbia for a crime of violence," while this defendant is in custody pursuant to a judgment of this Court, not the Superior Court.

[6] The ten requirements are generally summarized as follows: (1) the Federal defendant asserts under penalty of perjury that he is actually innocent of a federal crime, 18 U.S.C. § 3600(a)(1); *Osborne*, 557 U.S. at 63 (noting that IPA "requires a sworn statement that the applicant is innocent"); (2) the specific evidence to be tested was secured in relation to the investigation or prosecution of the federal crime, 18 U.S.C. § 3600(a)(2); (3) the specific evidence to be tested was not previously subjected to testing, and the federal defendant did not knowingly fail to request DNA testing of that evidence in a prior motion for post-conviction DNA testing, or if the specific evidence was previously subjected to DNA testing, the federal defendant is requesting DNA testing using a new method or

defendant fails to demonstrate "all" of them.  Specifically, as discussed in more detail below, the defendant does not, and cannot, satisfy at least the following three requirements: (1) "[t]he applicant identifies a theory of defense that . . . would establish the actual innocence of the applicant," *id*. at (a)(6)(B); (2) "[t]he proposed DNA testing of the specific evidence may produce new material evidence that would—(A) support the theory of defense . . . and (B) raise a reasonable probability that the applicant did not commit the offense," *id*. at (a)(8)(B); and (3) "[t]he motion is made in timely fashion," *id*. at (a)(10).

### 1. The Defendant Has Not Identified a Theory of Defense That Would Establish Actual Innocence

The defendant is not entitled to post-conviction DNA testing because he has failed to identify a theory of defense that would establish his actual innocence, and his proposed DNA testing would not "raise a reasonable probability" that he is actually innocent.  18 U.S.C. § 3600(a)(6) & (a)(8)(B).  The defendant contends that his actual innocence would be proven through post-conviction DNA testing of the drugs found in his car and proffers that this requested testing will demonstrate that "the drugs found in his car was [sic] not his." Def.'s DNA Mot. at 1.  The defendant's proffered theory of defense is predicated on an incorrect understanding of the relevant law.

---

technology that is substantially more probative than the prior DNA testing, *id.* § 3600(a)(3); (4) the specific evidence to be tested is in the possession of the Government and has been retained under conditions sufficient to ensure that such evidence has not been contaminated or altered in any respect material to the proposed DNA testing, *id.* § 3600(a)(4); (5) the proposed DNA testing is reasonable in scope, uses scientifically sound methods, and is consistent with accepted forensic practices, *id.* § 3600(a)(5); (6) the federal defendant identifies a theory of defense that is not inconsistent with a theory of defense presented at trial and that would establish his actual innocence, *id.* § 3600(a)(6); (7) the identity of the perpetrator was an issue at the trial of the federal defendant, *id.* § 3600(a)(7); (8) the proposed DNA testing may produce new material evidence that would support the theory of defense and raise a reasonable probability that the Federal defendant did not commit the offense, *id.* § 3600(a)(8); (9) the federal defendant certifies he will provide a DNA sample for comparison, *id.* § 3600(a)(9); and (10) the motion is made in a timely fashion, *id.* § 3600(a)(10).

The defendant was convicted of unlawful possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841. To sustain this conviction, the government need not prove that the defendant was in actual possession of the drugs. Rather, it is sufficient to prove that the defendant exercised "constructive possession" over the contraband. *See, e.g.*, *United States v. Brinson-Scott*, 714 F.3d 616, 624 (D.C. Cir. 2013); *United States v. Lawrence*, 662 F.3d 551, 553 (D.C. Cir. 2011). "To establish constructive possession, the government must prove that [the defendant] 'knew of, and was in a position to exercise dominion and control over,'" the drugs. *United States v. Elliott*, No. 14-3065, 2015 WL 9309072, at *1 (D.C. Cir. Dec. 18, 2015). "Although mere proximity to [the drugs] is insufficient to establish constructive possession, evidence of some other factor -- including connection with [the drugs], proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise -- coupled with proximity may suffice." *Id.*

At trial, the government relied on this theory of constructive possession, which does not require the defendant to have actually touched the drugs to prove possession. *See* Govt.'s Opp'n to Def.'s DNA Mot. ("Govt.'s DNA Opp'n") at 10, ECF No. 87. The defendant's flight from his car after police officers attempted to stop him was highly probative evidence of his knowledge of the incriminating evidence in his car. *Id.* at 11 n.6. Therefore, a DNA report showing no match to the defendant would not be inconsistent with the government's theory of constructive possession, on which he was convicted by a jury.

In other words, the defendant has failed to "identify a theory of defense that . . . would establish actual innocence," 18 U.S.C. § 3600(a)(6), and even if he received the desired DNA test results, they would not "raise a reasonable probability that the applicant did not commit the

offense," *id.* at (a)(8)(B). Failure to satisfy these two of the ten enumerated requirements, standing alone, would warrant denial of the defendant's request for post-sentencing DNA testing.

### 2. The Defendant's IPA Motion is Not Timely

The defendant's motion for post-conviction DNA testing also falls because it was not timely filed. The IPA provides that "[t]here shall be a rebuttable presumption against timeliness for any motion," *id.* at (a)(10)(B), that is not "made within 60 months of enactment of the Justice for All Act of 2004 or within 36 months of conviction, whichever comes later," *id.* 10(A). An applicant may rebut this presumption against timeliness if the court finds:

> (i) that the applicant was or is incompetent and such incompetence substantially contributed to the delay in the applicant's motion for a DNA test;
> (ii) the evidence to be tested is newly discovered DNA evidence;
> (iii) that the applicant's motion is not based solely upon the applicant's own assertion of innocence and, after considering all relevant facts and circumstances surrounding the motion, a denial would result in a manifest injustice; or
> (iv) upon good cause shown.

*Id.* § 3600(a)(10)(B)(i)–(iv); *see also United States v. Pitera*, 675 F.3d 122, 128 (2d Cir. 2012) ("Rebuttal may include a showing that the application is based on information presented in a motion previously denied or a showing by 'clear and convincing evidence' that the sole purpose of filing is to harass or cause delay.").

The defendant's motion for post-conviction DNA testing is presumptively untimely. He moved for DNA testing on October 20, 2014, five years following the enactment of the IPA and more than eighteen years after his 1997 conviction. Def.'s DNA Mot. at 1. The defendant may rebut the presumption against timeliness by demonstrating one of the four reasons listed in § 3600(a)(10)(B)(i)–(iv), but he does not do so here. First, the defendant does not claim that he is or was incompetent, which incompetence contributed to the delay in his application for DNA testing. Second, the evidence that the defendant seeks to examine—drugs retrieved from his car

at the time of his arrest—existed at the time of his 1997 conviction, and, therefore, the evidence to be tested is not "newly discovered DNA evidence." 18 U.S.C. § 3600(a)(10)(B)(ii).

Third, the defendant stresses his assertion of innocence, Def.'s DNA Mot. at 1 ("From day one, defendant has claimed 'actual innocence' of the drugs and biological material evidences found in his car, and the drugs found in his car was not his."), but he must demonstrate, "as the statute requires, that the injustice would be 'unmistakable, clear, plain, or indisputable and requir[ing] that the opposite conclusion be clearly evident.'" *United States v. Cowley*, No. 2:99-00170-01, 2014 WL 7408367, at *7 (S.D.W.Va. Dec. 31, 2014) (quoting 18 U.S.C. § 3600(a)(10)(C)(ii)), *aff'd* 814 F.3d 691 (4th Cir. 2016). This requisite showing "requires more than simply demonstrating that a failure to entertain the motion may leave an innocent behind bars." *Id.* (citing *United States v. MacDonald*, 37 F. Supp. 3d 782, 793 (E.D.N.C. 2014)). The defendant proffers no relevant facts or circumstances suggesting that denial of this motion would result in a manifest injustice, particularly since he is unable to show that the results of the DNA tests would be able to establish his actual innocence of the crime for which he was convicted.

Finally, the defendant provided no facts to support a finding of good cause for his delayed application for DNA testing. The defendant seeks to excuse any delay in seeking post-conviction DNA testing by citing his ignorance of the law. Def.'s DNA Mot. at 2 ("If defendant would have known of his right to a DNA testing, he would have asked for it."). Courts have consistently found that "good cause" cannot be satisfied by merely pleading ignorance. *See United States v. Cowley*, 814 F.3d 691, 699 (4th Cir. 2016) (denying motion for DNA testing by defendant sentenced in 2000, due to protracted delay of almost eight years after enactment of the IPA to seek relief); *cf. Thomas*, 597 F. App'x at 886 ("[A] prisoner's belated discovery of a decade-old DNA technique that was known when his case went to trial is not 'good cause' as

contemplated by § 3600."). Thus, the defendant is unable to demonstrate good cause to rebut the presumption of untimeliness.

Accordingly, the defendant's motion for post-conviction DNA testing is denied.

## III. CONCLUSION

For the foregoing reasons, the defendant's motion for reduction of sentence and post-conviction DNA testing are denied. An order consistent with this Memorandum Opinion will be contemporaneously entered.

**SO ORDERED.**

Date: April 15, 2016

_____
BERYL A. HOWELL
Chief Judge